Magomed Gusein Gasanov (Cal. SBN 368130)
MGG Law, PC
468 N. Camden Dr., Ste. 208
Beverly Hills, CA 90210
Tel.: (213) 642-9978
Email: gasanov@mgg.law

*Attorney for Petitioner Vitaliy Payevskiy*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| VITALIY PAYEVSKIY,<br><br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ, JR., Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; TODD BLANCHE, Attorney General of the United States; WARDEN, Adelanto ICE Processing Center, in their official capacities,<br><br>Respondents. | Case No. 5:26-cv-06267<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>A216-014-664 |

# TABLE OF CONTENTS


**I. INTRODUCTION** .......... 3

**II. CUSTODY, JURISDICTION, AND VENUE** .......... 3

**III. PARTIES** .......... 5

**IV. EXHAUSTION** .......... 6

**V. STATEMENT OF FACTS** .......... 6

A. Admission, Asylum Application, and Work Authorization (2014–2025) .......... 6

B. Arrest, Immigration Judge's Bond Order, and Release (2025) .......... 7

C. ICE's Added Conditions and Petitioner's Full Compliance (2025–2026) .......... 8

D. Re-Detention Without Notice or Hearing (October 14, 2026) .......... 9

**VI. FIRST CLAIM: PROCEDURAL DUE PROCESS — RE-DETENTION WITHOUT NOTICE OR HEARING** .......... 10

A. Petitioner Has a Protected Liberty Interest .......... 10

B. The Mathews Factors Required a Hearing Before Re-Detention .......... 12

**VII. SECOND CLAIM: PROCEDURAL DUE PROCESS — IMPOSITION OF ADDITIONAL RESTRAINTS WITHOUT NOTICE OR HEARING** .......... 15

A. The GPS Monitoring and Geographic Restriction Are Additional Restraints on Protected Liberty .......... 15

B. ICE Imposed Those Restraints Without Notice, Individualized Findings, or Neutral Review .......... 17

C. Under Mathews, Those Procedures Were Constitutionally Inadequate .......... 18

**VIII. REMEDY** .......... 20

A. Release on the Immigration Judge's Bond, Without GPS or a Zone Restriction .......... 20

B. A Limited Permanent Injunction Is Warranted .......... 21

**PRAYER FOR RELIEF** .......... 22

**VERIFICATION BY COUNSEL PURSUANT TO 28 U.S.C. § 2242** .......... 24

**EXHIBIT INDEX** .......... **Error! Bookmark not defined.**

## I. INTRODUCTION

1. Petitioner Vitaliy Payevskiy is a citizen of Kazakhstan. He was lawfully admitted to the United States in 2014, and his asylum application has been pending since 2017. In June 2025, an immigration judge ordered him released on a $6,000 bond. DHS waived appeal. After the immigration judge set the terms of his release, ICE added GPS monitoring and a geographic restriction on its own, without notice, individualized findings, or review by any neutral decisionmaker. Petitioner posted the bond and has complied with the terms of his release ever since.

2. USCIS has authorized Petitioner to work, with no restrictions on that authorization. He has worked as a truck driver since 2017. Petitioner coordinated his work with his ISAP supervisors, and each of them approved it.

3. On October 14, 2026, one day before his scheduled master calendar hearing, Petitioner reported as directed to ICE in downtown Los Angeles. An ICE officer told him he had violated the terms of his release, either because he lacked the proper license to drive his truck or because he had traveled outside his permitted zone. Petitioner disagreed. ICE detained him anyway. It gave him no written notice, no statement of reasons, and no hearing. He is now confined at the Adelanto ICE Processing Center.

4. The Due Process Clause of the Fifth Amendment does not allow the government to revoke a person's court-ordered conditional liberty this way. Petitioner asks the Court to order his immediate release on the conditions in ICE's June 23, 2025 Notice of Release. He also asks the Court to bar re-detention, or re-imposition of additional restraints, without notice, a hearing, and an individualized justification.

## II. CUSTODY, JURISDICTION, AND VENUE

5. Petitioner is in Respondents' physical custody at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301. Ex. H. He is

"in custody under or by color of the authority of the United States" and "in violation of the Constitution." 28 U.S.C. § 2241(c)(1), (3).

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, § 9, cl. 2 of the Constitution (the Suspension Clause). Federal courts have habeas jurisdiction to review the lawfulness of civil immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

7. No provision of 8 U.S.C. § 1252 strips jurisdiction over this petition. Petitioner does not challenge a removal order, the decision to commence proceedings, or the execution of a removal order. He challenges only the constitutionality of his present detention and of the conditions on which Respondents would release him. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality) (§ 1252(b)(9) does not bar detention challenges); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (§ 1252(g) is limited to three discrete actions). Section 1226(e) likewise does not bar constitutional claims or questions of law. *Demore*, 538 U.S. at 516–17; *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).

8. The Court may grant declaratory and injunctive relief ancillary to the writ under 28 U.S.C. §§ 2201–02 and 2243, and the All Writs Act, 28 U.S.C. § 1651. Petitioner asks that any order to show cause under § 2243 direct Respondents to identify the statutory provision they contend authorizes his detention, state the specific condition of release he allegedly violated and the facts supporting that claim, and lodge the arrest warrant, the Form I-213 for the October 14, 2026 arrest, Petitioner's Alternatives to Detention enrollment and conditions records, the terms of any geographic restriction, all ISAP case notes and communications with Petitioner, any approval of his travel or work activities, and any record of the decision to revoke his release or cancel his bond. *See Asihene v. Blanche*, No. 2:26-

cv-01249, 2026 U.S. Dist. LEXIS 170211 (D. Nev. July 31, 2026); *Shire v. ICE*, 2026 U.S. Dist. LEXIS 176288 (D. Nev. Aug. 7, 2026).

9. Venue is proper in this District because Petitioner is confined in San Bernardino County, within the Central District of California. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004); 28 U.S.C. § 1391(e). The Eastern Division is the proper division because Adelanto lies in San Bernardino County.

## III. PARTIES

10. Petitioner Vitaliy Payevskiy, A216-014-664, is a native and citizen of Kazakhstan born in 1994. He is detained at the Adelanto ICE Processing Center. Ex. H.

11. Respondent Warden of the Adelanto ICE Processing Center is Petitioner's immediate physical custodian and is named in his or her official capacity.

12. Respondent Ernesto Santacruz, Jr. is the Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations, which has administrative jurisdiction over Petitioner's detention. He is a legal custodian of Petitioner and is named in his official capacity.

13. Respondent David J. Venturella is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

14. Respondent Markwayne Mullin is the Secretary of Homeland Security. He is responsible for the administration of the immigration laws and is a legal custodian of Petitioner. He is sued in his official capacity.

15. Respondent Todd Blanche is the Attorney General of the United States. He oversees the Executive Office for Immigration Review, including the Immigration Courts and the BIA, and is named in his official capacity.

## IV. EXHAUSTION

16. No statute requires exhaustion before a § 2241 petition challenging immigration detention. Any exhaustion requirement is prudential, and the Court may waive it where administrative remedies are inadequate or futile, or where requiring exhaustion would cause irreparable injury. *Laing v. Ashcroft*, 370 F.3d 994, 998, 1000 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

17. No adequate administrative remedy exists. Petitioner already prevailed before an immigration judge: in June 2025, the Florence Immigration Court ordered him released on bond, and DHS waived appeal (¶ 28). ICE re-arrested him notwithstanding that final order. A second bond hearing would not restore what ICE took. It would require Petitioner, from detention, to prove again his entitlement to liberty a final order already conferred, *see* 8 C.F.R. § 1236.1(c)(8); *Matter of Guerra*, 24 I&N Dec. 37, 38 (BIA 2006); *Matter of Adeniji*, 22 I&N Dec. 1102, 1113 (BIA 1999), and nothing would prevent ICE from re-arresting him at his next check-in.

18. Nor can any administrative body grant the relief at the center of this petition: release without GPS monitoring or a geographic restriction. Neither an immigration judge nor the Board can adjudicate the constitutional claims raised here.

19. Requiring exhaustion would also cause irreparable injury. Each day of unconstitutional confinement is a loss of liberty that cannot be restored after the fact, and each day Petitioner is detained he is kept from the work that supports him.

## V. STATEMENT OF FACTS

### A. Admission, Asylum Application, and Work Authorization (2014–2025)

20. Petitioner is a native and citizen of Kazakhstan, born in 1994. Ex. A; Ex. B at 1.

21. On June 4, 2014, Petitioner was admitted to the United States at John F. Kennedy International Airport as a J-1 exchange visitor for duration of status. Ex. A.

22. On August 21, 2017, USCIS received Petitioner's application for asylum. That application remains pending.

23. Based on his pending asylum application, USCIS has authorized Petitioner to work under category (c)(8). 8 C.F.R. § 274a.12(c)(8). USCIS issued him employment authorization documents valid from February 28, 2025 through February 27, 2030, and from June 26, 2026 through September 25, 2027. Exs. F, G. Each card states, under "Terms and Conditions," "None." *Id.*

24. Petitioner has worked as a truck driver since 2017.

25. In April 2021, Petitioner inadvertently entered a restricted area of a military installation in San Diego, California, without realizing that access was restricted. A federal petty-offense case was opened, No. 3:21-po-00809-KSC-1 (S.D. Cal.). It was dismissed on October 27, 2021. Petitioner has never been convicted of any offense.

**B. Arrest, Immigration Judge's Bond Order, and Release (2025)**

26. On May 27, 2025, Petitioner was driving a truck for his then-employer, an Illinois trucking company, when Border Patrol agents stopped him at a checkpoint near Blythe, California. Ex. B at 1–3. He told the agent that he had employment authorization and presented his valid employment authorization card and his California driver's license. *Id.* at 3. The agents arrested him. *Id.*

27. DHS served Petitioner with a Notice to Appear charging him as removable under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who remained in the United States longer than permitted. Ex. B at 3–4. DHS thus charged Petitioner with deportability as a person previously admitted, not with inadmissibility as an applicant for admission.

28. On June 20, 2025, in custody redetermination proceedings under 8 C.F.R. § 1236, Immigration Judge Victoria Levin of the Florence Immigration Court granted Petitioner's request and ordered him released from custody under a bond of $6,000. Ex. C. DHS and Petitioner both waived appeal. *Id.* The order is final.

29. On June 23, 2025, the $6,000 bond was posted, and ICE released Petitioner. Ex. D.

30. The same day, ICE issued a Notice of Release listing the conditions of Petitioner's release: that he report for any hearing or interview as directed; surrender for removal if ordered removed; not change his residence without first obtaining written permission; not violate any local, State, or Federal law; and assist DHS in obtaining travel documents. Ex. E. Neither the immigration judge's order nor ICE's Notice of Release imposed electronic monitoring or any restriction on where Petitioner could travel. Exs. C, E.

### C. ICE's Added Conditions and Petitioner's Full Compliance (2025–2026)

31. After Petitioner's release, ICE enrolled him in its Alternatives to Detention program, administered through the Intensive Supervision Appearance Program ("ISAP"). ICE required Petitioner to submit to continuous GPS location monitoring and restricted his movement to a designated geographic zone.

32. No immigration judge or other neutral decisionmaker imposed or reviewed those conditions. They appear nowhere in the immigration judge's order or in ICE's Notice of Release. Exs. C, E.

33. From his release until his re-detention, Petitioner complied with every condition of his release. He reported as directed to ICE in Los Angeles and complied with ISAP's requirements.

34. Petitioner continued to work as a truck driver under his federal employment authorization. Driving a truck for a living requires travel. Petitioner coordinated his work activities with each of his ISAP supervisors, and each of them affirmatively approved those activities.

35. The written terms of Petitioner's ISAP enrollment, the boundaries of the geographic zone, and the records of his supervisors' approvals are maintained by

ICE and its ISAP contractor. Petitioner will supplement the record as those documents become available.

36. Petitioner holds a valid California driver's license. *See* Ex. B at 3. The truck he drives has a gross vehicle weight rating under 26,001 pounds. A commercial driver's license is required only for vehicles at or above that threshold. 49 C.F.R. § 383.5 (defining "commercial motor vehicle").

37. Since his release in June 2025, Petitioner has not been arrested or charged with any offense.

**D. Re-Detention Without Notice or Hearing (October 14, 2026)**

38. On October 14, 2026, Petitioner appeared as directed for his scheduled check-in at ICE's office in downtown Los Angeles. His removal proceedings were set for a master calendar hearing the next day, October 15, 2026.

39. At the check-in, an ICE officer told Petitioner that he had violated the terms of his release, either because he did not have an appropriate license to drive his truck or because he had traveled outside his permitted zone. The officer did not identify which.

40. Petitioner explained that he holds a valid driver's license; that he needs no commercial license because his truck weighs less than 26,000 pounds; that he has worked as a truck driver since 2017 without any problem; and that his ISAP supervisors had approved his work. He asked to speak with a supervisor. The officer did not agree with him.

41. ICE took Petitioner into custody. ICE gave him no written notice that his release was revoked, no written statement of the condition he allegedly violated or the facts supporting that claim, no disclosure of evidence, and no opportunity to respond before a neutral decisionmaker. ICE served him with no papers at the time of his arrest.

42. ICE identified no new arrest, charge, or conviction, and none exists (¶ 37). The April 2021 matter, which was dismissed (¶ 25), predates the immigration judge's June 2025 bond order.

43. ICE transferred Petitioner to the Adelanto ICE Processing Center, where he remains. Ex. H. His removal proceedings have been transferred to the Adelanto Immigration Court.

44. No neutral decisionmaker has reviewed Petitioner's re-detention, and no such review is scheduled.

## VI. FIRST CLAIM: PROCEDURAL DUE PROCESS — RE-DETENTION WITHOUT NOTICE OR HEARING

45. Petitioner incorporates paragraphs 1 through 44.

46. The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." Its protection extends to every person in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment . . . lies at the heart of the liberty that Clause protects." *Id.* at 690. A procedural due process claim proceeds in two steps: whether the petitioner holds a protected liberty interest, and, if so, what procedures are required before the government may deprive him of it. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022); *G.A. v. Santacruz*, No. 5:26-cv-05538-RAO, Dkt. 11 at 2–3 (C.D. Cal. Oct. 9, 2026). Respondents deprived Petitioner of a protected liberty interest without notice and without a pre-deprivation hearing (¶¶ 38–44).

### A. Petitioner Has a Protected Liberty Interest

47. A person released from custody on conditions holds a liberty interest that "includes many of the core values of unqualified liberty," and its termination "inflicts a grievous loss." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). That interest cannot be revoked without notice and a hearing. *Id.* at 485–89; *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Young v. Harper*, 520 U.S. 143, 147–49 (1997).

48. Courts in this Circuit apply these principles to noncitizens whom ICE released and then re-arrested. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (release creates "an implicit promise" that liberty will be revoked only for violation of its conditions (quoting *Morrissey*, 408 U.S. at 482)). Courts in this District now consistently find a protected liberty interest on such facts. *G.A.*, Dkt. 11 at 3; *Khushvaktov v. Santacruz*, No. 5:26-cv-04539-AJR, Dkt. 11 at 6–7 (C.D. Cal. Aug. 24, 2026); *Bekhoev v. Marin*, No. 5:26-cv-00206-RAO, Dkt. 25 at 7–9 (C.D. Cal. Apr. 28, 2026).

49. Petitioner's interest is stronger than most. His liberty was conferred not by an exercise of ICE's discretion alone but by a final order of an immigration judge entered after a custody redetermination, from which DHS waived appeal (¶ 28). For more than fifteen months he lived and worked in the community under that order, posted bond, and complied with every condition of release (¶¶ 29–37). *See Bekhoev*, Dkt. 25 at 8–9. His presence was also contemplated by statute: Congress authorizes employment for asylum applicants while their claims are pending, 8 U.S.C. § 1158(d)(2), and excludes that time from unlawful presence, 8 U.S.C. § 1182(a)(9)(B)(iii)(II). USCIS's issuance of (c)(8) employment authorization reflects that his application, pending since 2017, is neither frivolous nor abandoned (¶¶ 22–23). *Khushvaktov*, Dkt. 11 at 6 n.1 (citing 8 C.F.R. § 208.7); *see Vilela v. Robbins*, 813 F. Supp. 3d 1144, 1153 (E.D. Cal. 2025).

50. Petitioner is not an applicant for admission. DHS admitted him as a J-1 nonimmigrant in 2014 and charged him as deportable under 8 U.S.C. § 1227(a)(1)(B), not as inadmissible (¶¶ 21, 27). His detention and release are governed by 8 U.S.C. § 1226(a), under which the immigration judge ordered him released on bond (¶ 28).

51. ICE may revoke release under 8 U.S.C. § 1226(b) and 8 C.F.R. § 236.1(c)(9), but that authority operates within the Constitution's limits. Where an

immigration judge has ordered release, ICE may not re-arrest absent a material change in circumstances. *See Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (accepting the government's position that, once an immigration judge's bond order became administratively final, ICE could not re-detain the petitioner absent changed circumstances). No such change exists. ICE identified no new arrest, charge, or conviction (¶ 42). The two grounds the officer offered, a license deficiency or travel outside a zone, were neither established nor material: Petitioner holds a valid license and needs no commercial license for his vehicle (¶ 36), and the travel was work his ISAP supervisors had approved (¶ 34). Neither ground bears on whether Petitioner will appear. He was arrested at a check-in he attended as directed, the day before his scheduled court hearing (¶ 38).

**B. The Mathews Factors Required a Hearing Before Re-Detention**

52. The process due before a deprivation of liberty is determined by balancing (1) the private interest affected, (2) the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and (3) the government's interest, including the burden of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Ninth Circuit applies *Mathews* to immigration detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). Ordinarily, due process requires a hearing before the deprivation occurs. *Zinermon v. Burch*, 494 U.S. 113, 127, 132 (1990). Each factor weighs in Petitioner's favor.

53. The private interest is at its weightiest. The interest at stake is freedom from physical confinement, "the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Zadvydas*, 533 U.S. at 690. Here it is liberty a neutral judge conferred by final order and on which Petitioner relied for more than fifteen months (¶ 49). Detention also deprives him of his

livelihood and impairs his ability to pursue his asylum application, pending since 2017 (¶¶ 22–24).

54. The risk of erroneous deprivation is at its highest because ICE used no procedure at all. *Morrissey* sets the floor for revoking conditional liberty: written notice of the claimed violation, disclosure of the evidence, an opportunity to be heard before a neutral decisionmaker, and a written statement of reasons. 408 U.S. at 489. Petitioner received none of them (¶ 41).

55. The facts show how real that risk was. The officer could not say which condition Petitioner had violated (¶ 39). One asserted ground, a license deficiency, is contradicted by Petitioner's valid license and the federal weight threshold (¶ 36). The other, travel outside a zone, concerns work ICE's own ISAP supervisors had approved (¶ 34). Society has an interest in not having conditional liberty revoked "because of erroneous information or because of an erroneous evaluation of the need to revoke." *Morrissey*, 408 U.S. at 484. Civil immigration detention is justified only to prevent flight or danger. *Zadvydas*, 533 U.S. at 690. The immigration judge's bond order reflected a judgment that a $6,000 bond adequately addressed both (¶ 28), *see Rasulov v. Santacruz*, No. 5:26-cv-01815-AJR, Dkt. 12 at 6 & n.1 (C.D. Cal. Apr. 22, 2026), and nothing has changed since (¶ 42).

56. The value of the missing safeguard is correspondingly high. Written notice and a hearing before a neutral decisionmaker, at which the government must justify detention, would have exposed the errors in the officer's stated grounds and prevented this deprivation. And no post-deprivation hearing can cure the violation, for three independent reasons.

57. First, the deprivation was planned, not random. ICE set the check-in date in advance and arrested Petitioner when he appeared as directed (¶ 38). Where a deprivation is predictable and pre-deprivation process is feasible, post-deprivation process does not satisfy due process. *Zinermon*, 494 U.S. at 136–39 (distinguishing *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984));

*see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). A hearing may be postponed only in extraordinary situations demanding very prompt action, *Fuentes v. Shevin*, 407 U.S. 67, 82, 90–92 (1972), and a routine scheduled check-in is the opposite of one.

58. Second, liberty lost to confinement cannot be restored after the fact. Each day in Adelanto is a completed injury that no later hearing can undo.

59. Third, the post-deprivation process available is inadequate. A new bond hearing would place on Petitioner, from detention, the burden of re-proving an entitlement to release that a final order already established (¶ 17). An immigration judge could not address the ICE-imposed conditions that gave rise to the arrest (¶ 18). And Petitioner's experience shows the limits of that process: he already prevailed before an immigration judge, and ICE re-arrested him anyway. *See Bekhoev*, Dkt. 25 at 10 (citing *Juarez Fernandez v. Semaia*, No. CV 25-3412-SPG (MBK), 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026)).

60. The government's interest, by contrast, is minimal. Its legitimate interests are ensuring Petitioner's appearance and protecting the community. The $6,000 bond, his reporting obligations, and his own stake in his pending asylum case served both for more than fifteen months (¶¶ 29–37). He appeared at the very check-in where he was arrested, one day before his scheduled hearing (¶ 38). The government has no legitimate interest in detaining a person who presents neither a flight risk nor a danger. *Zadvydas*, 533 U.S. at 690–91.

61. The burden of additional process is slight. Petitioner was already in ICE's office on a date ICE chose. Custody hearings are routine and impose minimal cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *G.A.*, Dkt. 11 at 3–4.

62. All three *Mathews* factors favor Petitioner. His re-detention without notice or a pre-deprivation hearing violates the Due Process Clause.

## VII. SECOND CLAIM: PROCEDURAL DUE PROCESS — IMPOSITION OF ADDITIONAL CUSTODIAL RESTRAINTS WITHOUT NOTICE OR HEARING

63. Petitioner incorporates paragraphs 1 through 62.

64. Due process protects not only against re-incarceration, but also against the addition of custodial restraints to the release a neutral judge ordered. After the immigration judge set the terms of Petitioner's release, ICE added continuous GPS monitoring and a geographic restriction without notice, without individualized findings, and without review by any neutral decisionmaker. Courts have held that this violates procedural due process. *Harrington v. Albarran*, No. 26-cv-01889-JST, Dkt. 9 at 1, 8–10 (N.D. Cal. Mar. 23, 2026); *M.A.M.G. v. Albarran*, No. 26-cv-06143-RFL, Dkt. 16 at 10–13 (N.D. Cal. Aug. 27, 2026). The same result follows here. This claim stands independently of the First Claim: even if ICE had used proper procedures to re-arrest Petitioner, it could not lawfully return him to restraints that were themselves imposed without process.

### A. The GPS Monitoring and Geographic Restriction Are Additional Restraints on Protected Liberty

65. Custody is not limited to physical confinement. It includes "restraints not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963); *Munoz v. Smith*, 17 F.4th 1237, 1241 (9th Cir. 2021). Conditions that compel a person's presence at set times and places, or confine where he may go, are custodial. *Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973); *Means v. Navajo Nation*, 432 F.3d 924, 928 (9th Cir. 2005); *Dow v. Cir. Ct. of the First Cir.*, 995 F.2d 922, 923 (9th Cir. 1993).

66. Applying these principles, courts in this Circuit and elsewhere have held that ICE's ISAP supervision, combined with GPS monitoring and a geographic restriction, is custody. *Harrington*, Dkt. 9 at 6–8 (ankle monitor, ISAP check-ins, and restriction to a radius in Northern California); *M.A.M.G.*, Dkt. 16 at 7–9

(collecting cases); *Cruz v. Lyons*, 2025 WL 3443146, at *3 (C.D. Cal. Dec. 1, 2025); *Ayala v. Albarran*, No. 5:26-cv-03092-BLF, 2026 WL 1179862, at *3 (N.D. Cal. Apr. 30, 2026) (SmartLINK reporting and GPS monitoring); *Batz Barreno v. Baltasar*, 816 F. Supp. 3d 1255, 1258 (D. Colo. 2026); *N- N- v. McShane*, 813 F. Supp. 3d 496, 502 (E.D. Pa. 2025); *A.B.D. v. Wamsley*, No. 6:25-cv-02014-AA, 2026 WL 178306, at *8 (D. Or. Jan. 22, 2026). *Munoz* is not to the contrary. It held sex-offender monitoring non-custodial because the monitoring did not target the petitioner's movement, demand his presence anywhere, or prevent him from going anywhere. 17 F.4th at 1245–46. ICE's conditions do all three. *Harrington*, Dkt. 9 at 7–8; *M.A.M.G.*, Dkt. 16 at 8–9 (declining to follow *Ba v. Lyons*, 2026 WL 218936 (S.D. Cal. Jan. 27, 2026)).

67. Petitioner's conditions fall within that rule. ICE subjected him to continuous GPS location monitoring and confined his movement to a designated zone (¶ 31), enforced by reporting obligations and the threat of re-arrest that ICE in fact carried out (¶¶ 39–41). The public generally bears no such restraints, and they go well beyond what the immigration judge imposed: a $6,000 bond, together with the conditions in ICE's own Notice of Release (¶¶ 28, 30). The Board's view that ICE-imposed terms are not "custody" for purposes of an immigration judge's regulatory jurisdiction, *Aguilar-Aquino*, 24 I&N Dec. at 752–53, does not answer the constitutional question. It confirms only that no administrative forum reviews those terms (¶ 18).

68. Petitioner's protected liberty interest extends to freedom from these added restraints. A person released on bond has a protected interest "in remaining out of custody on bond." *Ortega*, 415 F. Supp. 3d at 969; *M.A.M.G.*, Dkt. 16 at 11. Here, the terms of that liberty were set by a neutral judge in a final order (¶ 49). Restraints beyond those terms deprive Petitioner of the same liberty; they differ from detention in degree, not in kind. *See Harrington*, Dkt. 9 at 1, 8–9; *M.A.M.G.*, Dkt. 16 at 14 ("re-detention" includes "the addition of custodial constraints, including but

not limited to electronic monitoring used in connection with ISAP monitoring and movement restrictions”).

### B. ICE Imposed Those Restraints Without Notice, Individualized Findings, or Neutral Review

69. ICE added GPS monitoring and the geographic restriction after the immigration judge’s order, on its own authority. Petitioner received no notice, no opportunity to be heard, and no individualized finding that the restraints were needed to address a risk of flight or danger (¶¶ 31–32). The immigration judge’s order imposed only a bond (¶ 28). Either the judge found further conditions unnecessary, or the judge did not consider them; “[i]n either event, no neutral arbiter has considered the conditions imposed by ICE and deemed them necessary.” *Harrington*, Dkt. 9 at 9. The court there rejected the government’s position that when an immigration judge declines to impose a condition without expressly saying so, ICE is free to impose it. *Id.* at 9 n.1.

70. ICE’s statutory authority to set and modify release conditions does not relieve it of the Constitution’s procedural requirements. *M.A.M.G.*, Dkt. 16 at 10 (citing *United States v. Rivera-Valdes*, 157 F.4th 978, 989 (9th Cir. 2025)). Whether process was due “depends on the facts underlying ICE’s imposition of these custodial conditions.” *Id.* Here those facts show no flight risk, no danger, and no change in circumstances. Petitioner had posted bond, complied with every condition, and held a pending asylum application and federal work authorization (¶¶ 22–23, 29–37).

71. The absence of process carried through to enforcement. No neutral decisionmaker ever defined what the restrictions required, and Petitioner had no way to contest them. His ISAP supervisors approved his work travel (¶ 34). When an ICE officer later treated that same work as a violation, Petitioner had no forum in which to show that he had complied (¶¶ 39–41).

### C. Under Mathews, Those Procedures Were Constitutionally Inadequate

72. "As other courts have found, all three *Mathews* factors support requiring a hearing before a noncitizen released from immigration detention can be subject to custody in the form of ankle monitoring and ISAP supervision." *Harrington*, Dkt. 9 at 9; *accord M.A.M.G.*, Dkt. 16 at 11. The same is true here.

73. The private interest is substantial. Freedom from physical restraint "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690; *see Garro Pinchi v. Albarran*, No. 25-cv-10831-PCP, 2026 WL 1975598, at *5 (N.D. Cal. July 8, 2026). Continuous GPS monitoring is a significant intrusion: attaching a device to a person to track his movements is a search. *Grady v. North Carolina*, 575 U.S. 306, 309 (2015) (per curiam); *see Carpenter v. United States*, 585 U.S. 296 (2018). The geographic restriction weighs especially heavily on Petitioner because of the work he does. USCIS authorized him to work without restriction (¶ 23), and he has driven trucks for a living since 2017 (¶ 24). Driving a truck requires travel. A fixed zone confines both his movement and his livelihood, and it exposes him to re-arrest whenever his work takes him past a line he did not draw. The interest in following one's chosen occupation is itself part of the liberty the Fifth Amendment protects, *Greene v. McElroy*, 360 U.S. 474, 492 (1959), and it adds weight to this factor.

74. The risk of erroneous deprivation is high because ICE used no procedure at all. *Harrington*, Dkt. 9 at 10. That risk "becomes overwhelmingly high when immigration officers act with unrestrained discretion . . . without an individualized showing of why detention is warranted or an effective process for noncitizens to challenge the exercise of such discretion." *Pichardo Medina v. Hermosilla*, No. 3:25-cv-02233-MC, 2025 WL 3712271, at *4 (D. Or. Dec. 22, 2025). The record confirms the risk. ICE added the restraints to a person with a full compliance record, after an immigration judge had found a $6,000 bond sufficient (¶¶ 28, 33).

Unreviewed, the restraints then operated arbitrarily: ISAP supervisors approved Petitioner's work travel, and another officer treated it as a violation without being able to say which condition had been violated (¶¶ 34, 39). Even actual "minor, sporadic, technical violations" of ISAP terms do not show flight risk or justify added restraints without a hearing. *M.A.M.G.*, Dkt. 16 at 12; *Bernal v. Albarran*, No. 25-cv-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025). Petitioner committed none. A hearing at which ICE had to justify the restraints, and Petitioner could present his supervisors' approvals and his compliance, would have had substantial value.

75. The government's interest is low. Its legitimate interests in Petitioner's appearance and the community's safety were already served by the bond and his reporting obligations. He appeared at every check-in, including the one at which he was arrested, the day before his scheduled hearing (¶¶ 33, 38). Nothing suggests he poses a flight risk or a danger. *See M.A.M.G.*, Dkt. 16 at 12–13; *Ayala*, 2026 WL 1179862, at *4. A hearing would impose minimal burden, offset by the cost of the monitoring itself. *Harrington*, Dkt. 9 at 10; *Doe*, 787 F. Supp. 3d at 1094. And less restrictive conditions, such as periodic reporting, would fully serve the government's interest. *See Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017).

76. All three *Mathews* factors favor Petitioner. ICE's imposition of GPS monitoring and a geographic restriction without notice, individualized findings, or neutral review violated procedural due process. Absent written notice, a hearing before a neutral decisionmaker, and an individualized determination that a material change in circumstances since the immigration judge's June 20, 2025 order makes them necessary to address a risk of flight or danger, those restraints cannot lawfully be re-imposed as conditions of Petitioner's release.

## VIII. REMEDY

### A. Release on the Immigration Judge's Bond, Without GPS or a Zone Restriction

77. Habeas relief aims to put the petitioner back where he would have been absent the violation. *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013). Here that is immediate release. A bond hearing held now would not cure the violation; it would ratify the unlawful arrest and shift to Petitioner, from inside a detention facility, the burden the government never carried. Courts in this District so hold. *Khushvaktov*, Dkt. 11 at 8–9 (release restores "the last uncontested status," and a post hoc bond hearing cannot cure an invalid re-detention; collecting cases); *G.A.*, Dkt. 11 at 4; *Bekhoev*, Dkt. 25 at 11.

78. The last uncontested status is the one set by the immigration judge's final bond order and ICE's June 23, 2025 Notice of Release: release on a $6,000 bond, subject to the conditions listed in that notice. Exs. C, D, E. Neither imposed GPS monitoring or a geographic restriction (¶ 30). Those conditions were added later by ICE alone, without notice or review by any neutral decisionmaker (¶¶ 31–32), and they are the very conditions on which ICE relied to re-arrest Petitioner (¶ 39). Where ICE has added custodial restraints without due process, the remedy is release on the conditions in effect before those restraints were added. *M.A.M.G.*, Dkt. 16 at 13–14; *Harrington*, Dkt. 9 at 12–13.

79. The Court has ample authority to set appropriate conditions of release. In habeas, the Court must "dispose of the matter as law and justice require." 28 U.S.C. § 2243. That authority includes ordering release on conditions tailored to the violation found. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). For the reasons stated in Part VII, and consistent with *Harrington* and *M.A.M.G.*, the appropriate conditions are those that secure appearance without preventing Petitioner from working: the $6,000 bond already posted, the conditions in ICE's Notice of Release, and periodic reporting as directed

by ICE, without electronic location monitoring and without a geographic restriction on Petitioner's travel within the United States. If the Court concludes that some travel-related condition is warranted, the least restrictive alternative is a requirement that Petitioner notify ICE in advance of overnight interstate work travel.

80. To prevent recurrence, two forms of prospective relief are warranted. First, any future re-detention should be preceded by at least seven days' written notice stating the specific condition of release Petitioner allegedly violated and the supporting facts, and a pre-deprivation bond hearing before an immigration judge. At that hearing the government should bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or a danger and that no condition or combination of conditions could reasonably assure his appearance and the community's safety. *See Khushvaktov*, Dkt. 11 at 10, 12; *Isiev v. Santacruz*, No. 5:26-cv-1033-CV (DFM), Dkt. 14 at 5 (C.D. Cal. Apr. 1, 2026). Second, Respondents should not re-impose electronic location monitoring, a geographic restriction, or any other custodial restraint beyond the conditions in ICE's Notice of Release unless they first provide written notice of the specific facts relied on and a hearing before a neutral decisionmaker, at which an individualized determination is made that a material change in circumstances since the immigration judge's June 20, 2025 order makes the restraint necessary to address a risk of flight or danger. *See M.A.M.G.*, Dkt. 16 at 14; *Harrington*, Dkt. 9 at 12–13. This relief does not bar future restraints regardless of circumstances. It requires only that any restraint be justified and reviewed before it is imposed.

### B. A Limited Permanent Injunction Is Warranted

81. Habeas relief is not limited to discharge from custody; the Court may dispose of the matter "as law and justice require." 28 U.S.C. § 2243; *Carafas*, 391 U.S. at 239; *Hilton*, 481 U.S. at 775. A permanent injunction issues where the petitioner shows (1) irreparable injury; (2) that remedies at law are inadequate; (3) that the balance of hardships favors equitable relief; and (4) that the public interest

would not be disserved. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Where the government opposes relief, the last two factors merge. *Garcia v. County of Alameda*, 150 F.4th 1224, 1234 (9th Cir. 2025).

82. Each factor is met. Petitioner has suffered irreparable injury through detention in violation of due process (¶¶ 38–44), and the risk of repetition is concrete. Release returns him to scheduled check-ins at the office where he was seized, which expose him to more risk of re-detention than the average person. *Matta v. Noem*, 2026 U.S. Dist. LEXIS 95844, at *5 (C.D. Cal. Apr. 29, 2026); *see Ramirez v. Mullin*, 2026 U.S. Dist. LEXIS 186848 (C.D. Cal. Aug. 17, 2026). That risk is heightened here, where ICE has already re-arrested Petitioner once despite a final bond order and on grounds its own supervisors contradicted (¶ 51). Damages cannot cure a deprivation of liberty, and the right to a pre-deprivation hearing can be enforced only before re-arrest. *Cu v. Marin*, 2026 U.S. Dist. LEXIS 113202, at *3 (C.D. Cal. May 21, 2026) (quoting *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1056 (N.D. Cal. 2021)). Requiring basic process before any future re-detention, or before any re-imposition of custodial restraints, imposes little burden; the alternative forces Petitioner to suffer detention again and seek habeas relief anew. *Khushvaktov*, Dkt. 11 at 10–11.

83. The relief is narrow. It runs to Petitioner alone. It does not bar re-detention or new conditions; it requires only notice, a hearing, and an individualized justification first. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 767 (1994). Courts in this District have rejected the argument that prospective relief is inappropriate in immigration habeas. *Khushvaktov*, Dkt. 11 at 11 (citing *Huy Cu v. Marin*, 2026 WL 1427009, at *1–3 (C.D. Cal. May 21, 2026), and *Araujo-Contreras v. Janecka*, 2026 WL 1625368, at *1–4 (C.D. Cal. June 3, 2026)); *G.A.*, Dkt. 11 at 4; *Isiev*, Dkt. 14 at 5–6.

## PRAYER FOR RELIEF

Petitioner respectfully asks the Court to:

(1) Assume jurisdiction over this matter;

(2) Order Respondents to show cause within three days why the writ should not be granted, and to identify the statutory provision they contend authorizes Petitioner's detention, state the specific condition of release he allegedly violated and the supporting facts, and lodge the arrest warrant, the Form I-213 for the October 14, 2026 arrest, Petitioner's Alternatives to Detention enrollment and conditions records, the terms of any geographic restriction, all ISAP case notes and communications with Petitioner, any approval of his travel or work activities, and any record of the decision to revoke his release or cancel his bond, 28 U.S.C. § 2243;

(3) Declare that Respondents' re-detention of Petitioner without notice and a pre-deprivation hearing, and their imposition of GPS monitoring and a geographic restriction without notice, individualized findings, or neutral review, violate the Due Process Clause of the Fifth Amendment;

(4) Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately on the $6,000 bond posted on June 23, 2025, which shall remain in effect, subject only to the conditions stated in ICE's Notice of Release dated June 23, 2025 and to periodic in-person or telephonic reporting as directed by ICE;

(5) Order that Petitioner's release shall not be conditioned on electronic location monitoring of any kind or on a restriction of his travel within the United States, or, in the alternative, that any travel-related condition be limited to advance notice to ICE of overnight interstate work travel, subject to modification only in accordance with paragraph (8) below;

(6) Order Respondents to return Petitioner's documents and property, including his employment authorization document and driver's license, upon release, and to file a notice of compliance within two business days of release;

(7) Permanently enjoin Respondents from re-detaining Petitioner without (a) at least seven days' written notice stating the specific condition of release he allegedly violated and the supporting facts, and (b) a pre-deprivation bond hearing

before an immigration judge, at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure his appearance and the community's safety;

(8) Permanently enjoin Respondents from re-imposing electronic location monitoring, a geographic restriction, or any other custodial restraint beyond the conditions stated in ICE's Notice of Release dated June 23, 2025, unless Respondents first provide (a) written notice of the specific facts relied on, and (b) a hearing before a neutral decisionmaker at which an individualized determination is made that a material change in circumstances since the immigration judge's June 20, 2025 order makes the restraint necessary to address a risk of flight or danger to the community;

(9) Order Respondents not to transfer Petitioner outside the Central District of California while this petition is pending;

(10) Award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(11) Grant any other relief the Court deems just and proper.

Dated: October 22, 2026 Respectfully submitted,

/s/ Magomed Gusein Gasanov
Magomed Gusein Gasanov
MGG Law, PC
Attorney for Petitioner

**VERIFICATION BY COUNSEL PURSUANT TO 28 U.S.C. § 2242**

I, Magomed Gusein Gasanov, declare as follows:

1. I am an attorney admitted to practice in California and before this Court. I represent Petitioner Vitaliy Payevskiy in this matter.

2. I submit this verification on Petitioner's behalf, as 28 U.S.C. § 2242 permits, because he is detained at the Adelanto ICE Processing Center. Obtaining his signature before filing would delay relief from ongoing detention.

3. I have read the foregoing Verified Petition for Writ of Habeas Corpus.

4. The factual statements in the Petition are based on (a) my review of the documents attached as Exhibits A through I; and (b) my communications with persons acting on Petitioner's behalf, including the account of his October 14, 2026 arrest that Petitioner relayed through them.

5. Exhibits A through I are true and correct copies of documents provided to me by persons acting on Petitioner's behalf, or printed from the publicly-available online sources.

6. Based on that review and those communications, the facts stated in the Petition are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on October 22, 2026, at Beverly Hills, California.

/s/ Magomed Gusein Gasanov
Magomed Gusein Gasanov